## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

LVMH SWISS MANUFACTURES SA,

                  Plaintiff,

   v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

            Defendants.

Case No. 25-cv-08867

## COMPLAINT

Plaintiff LVMH Swiss Manufactures SA ("TAG Heuer") brings this action against the Partnerships and Unincorporated Associations identified on Schedule A filed herewith (collectively, "Defendants") alleging as follows:

### I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through ecommerce stores operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller

1

Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of TAG Heuer's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused TAG Heuer substantial injury in the State of Illinois.

## II. <u>INTRODUCTION</u>

3.  TAG Heuer files this action to combat e-commerce store operators who trade upon TAG Heuer's reputation and goodwill by selling unauthorized and unlicensed products, including watches, using infringing and counterfeit versions of TAG Heuer's federally registered trademarks (the "Counterfeit TAG Heuer Products"). Defendants operate e- commerce stores under one or more Seller Aliases that advertise, offer for sale and sell Counterfeit TAG Heuer Products to unknowing consumers.

4.  E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and giving rise to the inference that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under multiple Seller Aliases to conceal their identities and the full scope and interworking of their counterfeiting operation. TAG Heuer is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit TAG Heuer Products over the Internet. TAG Heuer has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks because of Defendants' actions and seeks injunctive and monetary relief.

## III. **THE PARTIES**

5.      TAG Heuer is organized and existing under the laws of Switzerland with its principal place of business in La Chaux de Fonds, Switzerland.

6.      TAG Heuer is a world-famous luxury brand, founded in 1860 by Edouard Heuer. Plaintiff is engaged in the manufacture, sale and distribution of prestigious, high- quality, luxury, mechanical and electronic watches (collectively, the "TAG Heuer Products"). The TAG Heuer Products prominently display Plaintiff's famous internationally recognized and federally registered trademarks. In 1999, TAG Heuer became a part of the Louis Vuitton Moet Hennessy (LVMH) group.

7.      TAG Heuer Products have become enormously popular and even iconic, driven by TAG Heuer's arduous quality standards and innovative designs. Among the purchasing public, genuine TAG Heuer Products are instantly recognizable as such. In the United States and around the world, the TAG Heuer brand has come to symbolize high quality, and TAG Heuer Products are among the most recognizable of their kind in the world.

8.      TAG Heuer Products are distributed and sold to customers through authorized retailers throughout the United States, including in company-operated boutiques, via its e-commerce website located at www.tagheuer.com, and through a selective network of high-quality stores in Illinois such as Macy's and Bloomingdale's.

TAG Heuer incorporates a variety of distinctive marks in the design of its various TAG Heuer Products. As a result of its long-standing use, TAG Heuer owns common law trademark rights in its trademarks. TAG Heuer has also registered its trademarks with the United States Patent and Trademark Office. TAG Heuer Products typically include at least one of TAG Heuer's registered trademarks. Often

several TAG Heuer marks are displayed on a single product. TAG Heuer uses its trademarks in connection with the marketing of its TAG Heuer Products, including the following marks which are collectively referred to as the "TAG Heuer Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 2,281,436 | TAG HEUER | September 28, 1999 | For: Clocks, watches and parts thereof in class 014. |
| 5,202,283 | TAG HEUER | May 16, 2017 | For: soaps; perfumes; cosmetics, creams, and lotions for the body and hair; shampoos; makeup and makeup removers; lipstick; beauty masks; shaving preparations; after- shave lotions and balms; non-medicated toiletries; deodorants for personal use; leather polishes; preservative creams for leather in class 003.<br><br>For: apparatus for recording, transmission, reproduction, or processing of sound or images; electronic timers and timing sensors; calculating machines; equipment for data processing; timing dials and timing sensors; electronic timers; chronographs for use as specialized time recording apparatus; game software; computer operating software for smartwatches and mobile electronic |

4

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | devices; computer software for sending and receiving electronic mail, text messages, data, photographs, and videos; computer software for accessing, browsing, and searching online databases; computer software for sensing, monitoring, recording, displaying, measuring, and transmitting global positioning, direction, distance, altitude, speed, navigational information, weather information, temperature, physical activity level, heart rate, pulse rate, blood pressure, calories burned, steps taken, and biometric data; computer software for tracking and managing information regarding health, fitness, and wellness programs; computer peripherals; telephones; tablet computers; MP3 players; smartwatches; wearable computers; smartphones featuring a watch; accessories for computers, telephones, tablet computers, MP3 players, and smartwatches, namely, displays, monitors, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | protective covers, carrying cases, stands, batteries, battery chargers, headphones, speakers, headsets, microphones, car audio adapters, remote controls, connection cables, power adapters, docking stations, and adapter plugs; spectacles; sunglasses; optical lenses and glasses; spectacle cases; memory cards and integrated circuit cards; downloadable electronic publications in the nature of books, newsletters, catalogs, and brochures in the fields of watches, chronometric instruments, jewelry, apparel, luggage, leather accessories, personal care products, luxury goods, sports, and fashion; electronic sensors, monitors, and displays used to provide and display official time at sporting, cultural, wellness, entertainment, and educational events; electronic connected bracelets and connected cuffs for tracking the movement of people that also have a function of |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | transmitting, and/or receiving data to and/or from personal digital assistants, tablets, smart phones and personal computers through internet websites and other computer and electronic communication networks in class 009. For: jewelry; precious stones; horological instruments, namely, watches, wristwatches, and constitutive parts therefor; alarm clocks, clocks and other chronometric instruments, chronometers, chronographs as watches, chronometric apparatus for sports timing, chronometric apparatus for measuring and marking the time; watch bands, watch chains, watch springs, watch dials or watch glasses, watch winders, watch cases being parts of watches, cases and boxes adapted for holding watches; precious metals and their alloys; jewelry cases; boxes of precious metal; key rings, trinkets or fobs of precious metals; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | cuff links; bracelets; rings; medals; watches that also have a function of transmitting and/or receiving data to and/or from personal digital assistants, tablets, smart phones and personal computers through internet websites and other computer and electronic communication networks; watches containing an electronic game function, watches incorporating a telecommunication function; leather boxes adapted for holding watches in class 014. <br><br> For: passport holders and cases in class 016. <br> For: goods of leather and imitation leather, namely, leather or leatherboard boxes, leather or imitation leather envelopes, travel chests, bags, garment bags for travel, trunks, suitcases, luggage, carrying boxes intended for toiletry articles sold empty, rucksacks, handbags, beach bags, reusable shopping bags, shoulder bags, carrying cases, attaché cases, |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | briefcases, school satchels, under-arm bags, wallets, purses, money pouches, key cases, credit card holders; umbrellas, parasols, sun umbrellas, walking sticks in class 018.<br><br>For: clothing, namely, underwear, sweaters, shirts, bodices, corsets, suits, vests, raincoats, skirts, coats, trousers, jumpers, dresses, jackets, shawls, sashes for wear, scarves, neckties, pocket squares, suspenders, gloves, belts, stockings, tights, socks, singlets, bathing suits and bathrobes; footwear; headwear in class 025. For: retail store services and online retail store services featuring cosmetics, hair care and skin care preparations, perfumes, shaving preparations, toiletries, smartwatches, computers, tablet computers, computer hardware, computer software, computer peripherals, telephones, mobile electronic devices, health, fitness |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | and exercise sensors, monitors and displays, computer gaming machines and electronic games, and accessories for computers, telephones, and mobile electronic devices, sunglasses, spectacles, optical lenses and glasses, spectacle cases, jewelry and precious stones, watches, clocks, chronometric instruments, accessories for watches and chronometric instruments, leather goods, leatherware, bags, briefcases, luggage, wallets, purses, umbrellas, clothing, footwear, and headgear; public relations; advertising services for luxury products, namely, cosmetics, perfumes, optical goods, telephones, wearable electronic devices, jewelry, horological products, watches, connected watches, smartwatches, luggage, leatherware, bags, clothing, clothing accessories; business management and organization consultancy in the field of luxury goods in class 035. |

| 2,407,950 | TAG HEUER LINK | November 28, 2000 | For: Horological instruments and chronometrical instruments, namely watches, wrist- watches, straps for wrist- watches and watch cases, travel clocks, clocks, chronographs for use as watches, chronometers in class 014. |
|---|---|---|---|
| 3,569,070 | HEUER | February 3, 2009 | For: time measuring apparatus and instruments, namely, electronic stop watches, remote control miniprinter timers, electronic and manual timers, photocell timers, starting gate timers, telephone liaison timers, impulse distributor timers, electronic pistol starting timers, manual contactor timers, electric time control switches and their parts; cameras, digital audio players and handheld mobile digital electronic devices for use as a digital audio player, and for use as a camera; accessories for handheld mobile digital electronic devices, namely, cases, batteries, chargers, stands in class 009.<br><br>For: horological and |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | chronometric instruments, namely, watches, watchbands, chronometers, chronographs for use as watches in class 014. |
| 4,868,760 | TAG | December 15, 2015 | For: Timepieces and chronometric instruments in class 014. |
| 1,435,463 | FORMULA 1 | April 7, 1987 | For: Mechanical watches, and their constituent parts in class 014. |
| 3,046,300 | AQUARACER | January 17, 2006 | For: Jewelry, precious stones; timepieces and chronometric instruments, namely watches, watchbands, chronometers, chronographs for use as watches, clocks in class 014. |
| 1,471,988 |  | January 12, 1988 | For: Time measuring instruments, namely, electronic stop watches, remote control mini-printer timers, electronic and manual timers, photocell timers, starting gate timers, telephone liaison timers, impulse distributor timers, electronic pistol starting timers, manual contactor timers in class 009. |

| | | | |
|---|---|---|---|
| | | | For: Clocks, watches and parts thereof in class 014. <br><br> For: Sportswear, namely, parkas in class 025. |
| 2,484,514 | | September 4, 2001 | For: telephone and parts thereof, optical goods, namely spectacles, sunglasses, spectacle frames, spectacles cases in class 009. <br><br> For: organization of exhibitions for cultural or educational purposes in class 041. |

9.     The TAG Heuer Trademarks have been used exclusively and continuously in the U.S. by TAG Heuer and have never been abandoned. The above U.S. registrations for the TAG Heuer Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as Exhibit 1 are true and correct copies of the U.S. Registration Certificates for the TAG Heuer Trademarks included in the above table. The registrations for the TAG Heuer Trademarks constitute prima facie evidence of their validity and of TAG Heuer's exclusive right to use the TAG Heuer Trademarks pursuant to 15 U.S.C. § 1057(b).

10.     The TAG Heuer Trademarks are exclusive to TAG Heuer and are displayed extensively on TAG Heuer Products and in TAG Heuer's marketing and promotional materials. TAG Heuer Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, TAG Heuer has expended millions of dollars annually in advertising, promoting, and marketing featuring the TAG Heuer Trademarks. Because of these and other factors, the TAG Heuer name and the TAG

Heuer Trademarks have become famous throughout the United States.

11.     The TAG Heuer Trademarks are distinctive when applied to TAG Heuer Products, signifying to the purchaser that the products come from TAG Heuer and are manufactured to TAG Heuer's quality standards. Whether TAG Heuer manufactures the products itself or licenses others to do so, TAG Heuer has ensured that products bearing its trademarks are manufactured to the highest quality standards. The TAG Heuer Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the TAG Heuer Trademarks is of incalculable and inestimable value to TAG Heuer.

12.     TAG Heuer operates an e-commerce website where it promotes TAG Heuer Products at tagheuer.com. TAG Heuer Products are featured and described on the website and are available for purchase. The tagheuer.com website features proprietary content, images, and designs exclusive to TAG Heuer.

13.     TAG Heuer has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the TAG Heuer Trademarks. As a result, products bearing the TAG Heuer Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from TAG Heuer. TAG Heuer is a multi-million-dollar business, and TAG Heuer Products have become among the most popular of their kind in the world.

14.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to TAG Heuer. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions

14

with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for TAG Heuer to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, TAG Heuer intends to take appropriate steps to amend the Complaint.

## IV. **DEFENDANTS' UNLAWFUL CONDUCT**

16. The success of the TAG Heuer brand has resulted in its significant counterfeiting. Consequently, TAG Heuer has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, TAG Heuer has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were targeting and/or offering for sale Counterfeit TAG Heuer Products to consumers in this District and throughout the United States.

17. According to U.S. Customs and Border Protection ("CBP"), in fiscal year 2021 "CBP made over 27,000 seizures . . . with an estimated manufacturer's suggested retail price (MSRP) of over $3.3 billion, which represents an increase of 152% over the previous Fiscal Year, when goods valued at $1.3 billion MSRP were seized for IPR [Intellectual Property Rights] violations." (*See* Exhibit 2, Fiscal Year 2021 Intellectual Property Rights Seizure Statistics Report, at 5.) In FY 2021, over 24,000 of the IPR seizures (about 89 percent of the

total) were shipped via mail or express services (as opposed to cargo or other means). (*Id.* at 37.) Over 50 percent of the IPR seizures (with an MSRP of over $2.5 billion) originated from China and Hong Kong. (*Id.* at 35.)

18.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." (*See* Exhibit 3, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).)

19.     In its report on "Combating Trafficking in Counterfeit and Pirated Goods," the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommended that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. (Exhibit 4 hereto at 11, 35 (Jan. 24, 2020).) The report also notes that counterfeit

20.     products account for billions in economic losses, resulting in millions of lost jobs for legitimate businesses. (*Id.* at 18-19.)

21.     Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store fronts. (*Id.* at 22.) Since platforms generally do not require a seller to identify its underlying business entity, counterfeiters can have many different profiles that appear unrelated even though they are commonly owned and operated. (*Id.* at 39.) Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." (*Id.* at 25.)

22.     Defendants have targeted sales to Illinois residents by setting up and operating e-

16

commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit TAG Heuer Products to residents of Illinois.

23.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal, among other methods. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. TAG Heuer has not licensed or authorized Defendants to use any of the TAG Heuer Trademarks, and none of the Defendants are authorized retailers of genuine TAG Heuer Products.

24.     Many Defendants also deceive unknowing consumers by using the TAG Heuer Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract search engines crawling the Internet looking for websites relevant to consumer searches for TAG Heuer Products. Other e-commerce stores operating under Seller Aliases omit using the TAG Heuer Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for TAG Heuer Products.

25.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-

commerce operation.

26.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit TAG Heuer Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar or misspellings, and/or the use of the same text and images. Additionally, Counterfeit TAG Heuer Products for sale by the Seller Aliases

28.     bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit TAG Heuer Products were manufactured by and come from a common source and that Defendants are interrelated.

29.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

30.     Counterfeiters such as Defendants typically operate under multiple seller aliases

18

and payment accounts so that they can continue operation despite TAG Heuer's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to TAG Heuer.

31.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to manufacture, import, distribute, offer for sale, and sell Counterfeit TAG Heuer Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without authorization or license from TAG Heuer, have jointly and severally, knowingly and willfully used and continue to use the TAG Heuer Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit TAG Heuer Products into the United States and Illinois over the Internet.

32.     Defendants' unauthorized use of the TAG Heuer Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit TAG Heuer Products, including the sale of Counterfeit TAG Heuer Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming TAG Heuer.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

33.     TAG Heuer hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered TAG Heuer Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of

infringing goods. The TAG Heuer Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from TAG Heuer Products offered, sold, or marketed under the TAG Heuer Trademarks.

35.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the TAG Heuer Trademarks without TAG Heuer's permission.

36.     TAG Heuer is the exclusive owner of the TAG Heuer Trademarks. TAG Heuer's United States Registrations for the TAG Heuer Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of TAG Heuer's rights in the TAG Heuer Trademarks and are willfully infringing and intentionally using counterfeits of the TAG Heuer Trademarks. Defendants' willful, intentional, and unauthorized use of the TAG Heuer Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit TAG Heuer Products among the general public.

37.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     TAG Heuer has no adequate remedy at law, and if Defendants' actions are not enjoined, TAG Heuer will continue to suffer irreparable harm to its reputation and the goodwill of its well-known TAG Heuer Trademarks.

39.     The injuries and damages sustained by TAG Heuer have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit TAG Heuer Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

40.     TAG Heuer hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit TAG Heuer Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with TAG Heuer or the origin, sponsorship, or approval of Defendants' Counterfeit TAG Heuer Products by TAG Heuer.

42.     By using the TAG Heuer Trademarks on the Counterfeit TAG Heuer Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit TAG Heuer Products.

43.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit TAG Heuer Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44.     TAG Heuer has no adequate remedy at law and, if Defendants' actions are not enjoined, TAG Heuer will continue to suffer irreparable harm to its reputation and the goodwill of its TAG Heuer brand.

## PRAYER FOR RELIEF

WHEREFORE, TAG Heuer prays for judgment against Defendants as follows:

(1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys,

confederates, and all persons acting for, with, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.     Using the TAG Heuer Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine TAG Heuer Product or is not authorized by TAG Heuer to be sold in connection with the TAG Heuer Trademarks;

      b.     Passing off, inducing, or enabling others to sell or pass off any product as a genuine TAG Heuer Product that is not TAG Heuer's or not produced under the authorization, control, or supervision of TAG Heuer and approved by TAG Heuer for sale under the TAG Heuer Trademarks;

      c.     Committing any acts calculated to cause consumers to believe that Defendants' Counterfeit TAG Heuer Products are those sold under the authorization, control or supervision of TAG Heuer, or are sponsored by, approved by, or otherwise connected with TAG Heuer;

      d.     Further infringing the TAG Heuer Trademarks and damaging TAG Heuer's goodwill;

And

      e.     Manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for TAG Heuer, nor authorized by TAG Heuer to be sold or offered for sale, and which bear any of TAG Heuer's trademarks, including the TAG Heuer Trademarks, or any reproductions, counterfeit

copies or colorable imitations thereof;

(2)     For entry of an Order that, upon TAG Heuer's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the TAG Heuer Trademarks;

(3)     That Defendants account for and pay to TAG Heuer all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the TAG Heuer Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

(4)     In the alternative, that TAG Heuer be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the TAG Heuer Trademarks;

(5)     That TAG Heuer be awarded its reasonable attorneys' fees and costs; and

(6)     That awards TAG Heuer any and all other relief that this Court deems just and proper.

Dated July 29 2025                                Respectfully submitted,


                                                  */s/ Paul Kossof*
                                                  _____

                                                  *Counsel for Plaintiff, LVMH Swiss Manufactures SA*
                                                  Paul Kossof (ARDC #6319307)
                                                  KossofIPR
                                                  1509 Waukegan Road, #1162
                                                  Glenview, IL 60025
                                                  (224) 433-1553
                                                  p.kossof@kossofipr.com